IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ANTHONY DARRELL HINES,<br><br>Plaintiff,<br><br>v.<br><br>FRANK STRADA, in his official capacity as Tennessee's Commissioner of Correction, and<br><br>KENNETH NELSEN, in his official Capacity as Warden, Riverbend Maximum Security Institution,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.<br><br>**CAPITAL CASE**<br>**EXECUTION DATE:**<br>**August 13, 2026 at 10:00 AM** |

## COMPLAINT

Plaintiff Anthony Darrell Hines, by and through his counsel, hereby files his Complaint requesting that this Court enforce his constitutional rights and issue injunctive relief under 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the U.S. Constitution, and Title II of the Americans with Disabilities Act ("ADA") by ordering Defendants to refrain from performing his execution in a manner inconsistent with the United States Constitution and statutory law.

## JURISDICTION

1. Federal question jurisdiction over this matter arises under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 28 U.S.C. § 2202.

## VENUE

2. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. § 1391(b), as plaintiff Anthony Darrell Hines is currently housed at Riverbend Maximum Security Institution in Nashville, Tennessee.

## THE PARTIES

3. Plaintiff Anthony Darrell Hines is a United States citizen and resident of the State of Tennessee. His execution is scheduled for 10:00 AM C.D.T. on August 13, 2026. He is currently being held in the custody of Defendants at Riverbend Maximum Security Institution in Nashville, Tennessee.

4. Defendant Frank Strada is the Commissioner of the Tennessee Department of Correction ("TDOC"), which has its headquarters in Nashville, Tennessee. Commissioner Strada is responsible for overseeing operations at TDOC and for ensuring that all executions are carried out in compliance with the United States Constitution.

5. Defendant Kenneth Nelsen is the Warden of Riverbend Maximum Security Institution in Nashville, Tennessee, where the State of Tennessee conducts its executions by lethal injection. Warden Nelson is responsible for carrying out the directives of the Assistant Commissioner of Prison Operations to ensure that the Lethal Injection Protocol is followed.

6. Defendants are being sued in their official capacities. The named defendants are United States citizens and residents of Tennessee.

## STATEMENT OF FACTS

### I. TDOC's execution protocol does not account for Mr. Hines' individualized medical concerns.

7. On January 8, 2025, Tennessee finalized its current Lethal Injection Execution Protocol ("Protocol").

8. On January 14, Mr. Hines promptly filed an administrative grievance challenging the legality of the new Protocol.

9. In that grievance, Mr. Hines specifically alleged that "[t]he protocol, both on its face and as applied, poses an intolerable risk of severe suffering above what is necessary to enact the sentence of death because it fails to account for the specific medical needs of the grievant." Ex. 1 (Grievance) at 1.

10. On March 14, 2025—the day after the conclusion of the administrative grievance process—Mr. Hines and his co-plaintiffs filed a Complaint in Davidson County Chancery Court challenging the constitutionality of the Protocol. *See Burns v. Strada*, Case No. 25-0414-IV (Davidson Cnty., Tenn. Ch.). Ex. 2 (Complaint).

11. Claim 1.4 of that Complaint alleged that "execution by injected pentobarbital poses an intolerable risk of severe suffering in light of TDOC's failure to account for individual medical conditions, violating the Eighth Amendment and Article I, §§ 16 and 32 of the Tennessee Constitution." *Id.* at 142.

12. Claim 1.4 was dismissed without prejudice as to Mr. Hines, because Mr. Hines did not yet have a scheduled execution date and his medical status at the time of any future execution was unknown. The chancery court therefore concluded that the claim was unripe. Ex. 3 (Order on Motion to Dismiss).

13. On September 30, 2025, the Tennessee Supreme Court scheduled Mr. Hines' execution for August 13, 2026.

14. In the defendants' Answer in *Burns v. Strada*, they admitted that Mr. Hines fully exhausted his January 15 grievance. Ex. 4 (Answer) at 3.

## II. Mr. Hines suffered a stroke in January 2026 due to the gross negligence of TDOC's contracted medical provider, which has left him extremely debilitated.

15. In early December 2025, Mr. Hines suffered a stroke at Riverbend Maximum Security Institution (RMSI).

16. A physician with TDOC's contracted medical provider, Centurion, advised that Mr. Hines needed to be transferred to an ER for urgent evaluation. Ex. 5 (Hines Medical Records) at 1–2, 6.

17. However, a statewide on-call physician with Centurion, countermanded the ER transfer, writing that "urgent imaging is warranted, but not ER transfer." *Id.* at 1–3.

18. Although imaging could be performed "in house" at the prison's DeBerry Special Needs Facility, TDOC's medical contractor inexplicably failed to perform Mr. Hines' non-contrast CT scan until at least two weeks later, on December 22, 2025—at which point they confirmed that Mr. Hines had indeed suffered an ischemic stroke. *Id*. at 2, 7–8.

19. The physician recommended a follow-up MRI. *Id.*

20. To undersigned counsel's knowledge, that MRI was never performed.

21. After confirming that Mr. Hines had suffered an ischemic stroke, TDOC's contracted medical personnel then waited another two weeks (until January 6, 2026) to prescribe Mr. Hines an antiplatelet medication, aspirin. *Id.* at 8, 10, 12.

22. The physician likewise prescribed Mr. Hines an anti-coagulant medication, Eliquis. *Id.* at 11, 12.

23. However, the same Centurion statewide on-call physician who countermanded Mr. Hines' ER transfer also denied the Eliquis order, writing that "Anticoagulation is NOT typically indicated s/p CVA unless CVA is due to AFib, etc." *Id.* at 13.

24. Meanwhile, to undersigned counsel's knowledge, no testing was ever performed to determine whether Mr. Hines' stroke was, in fact, cardioembolic and potentially due to AFib.

25. Mr. Hines' medical records likewise do not indicate that Mr. Hines ever received Eliquis or any other anticoagulation medication.

26. Finally, Mr. Hines was referred for a neurological consult. *Id.* at 12.

27. Nevertheless, his medical records do not seem to indicate that a neurological consultation ever occurred.

28. Unsurprisingly, given TDOC's reckless failure to treat Mr. Hines' December 2025 stroke, Mr. Hines suffered a second stroke a week later (on January 13, 2026)—collapsing in his cell and hitting his head. *Id.* at 9.

29. Mr. Hines has been in RMSI's infirmary ever since, and is paralyzed on his left side, with partial left-sided blindness. *See* Ex. 6 (Decl. of David Pascal); Ex. 7 (Decl. of Aly Finn); Ex. 8 (Decl. of Dr. Nadkarni).

30. He also suffers from muscular atrophy, muscle spasticity, and incontinence, among other issues. *See* Ex. 6 (Decl. of David Pascal); Ex. 7 (Decl. of Aly Finn); Ex. 8 (Decl. of Dr. Nadkarni).

31. These symptoms substantially interfere with Mr. Hines' major life activities, including eating, sleeping, locomotion, and communication. *See* Ex. 6 (Decl. of David Pascal); Ex. 7 (Decl. of Aly Finn).

32. Dr. Siddhartha Nadkarni, a board-certified neurologist, examined Mr. Hines on February 2, 2026. Ex. 8 (Decl. of Dr. Nadkarni).

33. Based on that examination and his review of Mr. Hines' medical records, Dr. Nadkarni concludes that, "[i]n my professional opinion, TDOC's contracted medical personnel acted recklessly with respect to Mr. Hines' care in the aftermath of his stroke in December 2025 and violated universally accepted standards for stroke and post-stroke treatment." *Id.* at 4. "With prompt and proper treatment, Mr. Hines would have been significantly less likely to have suffered a recurrent stroke." *Id.*

## III. As a result of his January 2026 stroke, Mr. Hines suffers from muscle spasticity that makes it extremely painful for him to straighten his left arm—as is required by the Protocol.

34. Tennessee's execution gurney has arm extensions that position the arms of the person being executed at approximately a 45-degree angle from the chest.

35. Tennessee's Protocol requires members of TDOC's Restraint Team to place the person being executed supine on the execution gurney and "secure[] the inmate's arms to arm extensions on the gurney"—necessitating that the person's arms be abducted. Ex. 9 (Protocol) at 19.

36. As a result of his stroke in January 2026, Mr. Hines suffers from left-sided muscle spasticity—wherein his left arm remains bent at the elbow and his left hand is involuntarily clenched in a fist. Ex. 7 (Decl. of Aly Finn) at 1; *see also* Ex. 8 (Decl. of Dr. Nadkarni).

37. Mr. Hines is unable to unclench his left hand or extend his left arm by himself. Ex. 7 (Decl. of Aly Finn) at 1; *see also* Ex. 8 (Decl. of Dr. Nadkarni); Ex. 6 (Decl. of David Paschal) at 2.

38. During a visit on August 11, 2026, undersigned counsel attempted to straighten Mr. Hines' left arm, with his consent, to see if it caused Mr. Hines pain.

39. According to FPD Investigator David Paschal, who witnessed this attempt, "it was much too painful to fully straighten." Ex. 6 (Decl. of David Paschal).

40. Mr. Paschal reports that Mr. Hines described a burning sensation in his left hand and severe pain in his left shoulder when undersigned counsel attempted to straighten Mr. Hines' arm—a pain that Mr. Hines likened to having his shoulder crushed by a car. *Id.*

41. Mr. Hines described the pain as a 10 out of 10 on a scale of 1 to 10, with ten being the highest level of pain. *Id.* He added that the pain shoots from a 10 to a

30 at times. *Id.* Likewise, he stated that the pain in his shoulder feels like being stuck with a hot poker. *Id.*

42. TDOC has been on notice since at least January 14, 2025, that their Protocol fails to account for individualized medical concerns and is thereby likely to cause a person being executed to suffer severe pain and suffering, in violation of the Eighth and Fourteenth Amendments.

43. TDOC has likewise been on notice since at least July 27, 2027, that the spasticity in Mr. Hines' stroke-affected limb is likely to cause issues during his execution on August 13, 2026. In a filing before the Tennessee Supreme Court challenging TDOC's apparent plan to use an unqualified physician for the purposes of his execution, *State v. Hines*, Case No. M2025-00221-SC-DPE-DD (Tenn.), Mr. Hines attached a declaration from Dr. Gail Van Norman, a cardiothoracic anesthesiologist who has placed thousands of peripheral IV-lines over the course of her 35-year career. In that declaration, Dr. Van Norman stated that the rigidity of Mr. Hines' stroke-affected arm will likely "make it physically challenging to properly position the stroke-affected arm (e.g., to access the antecubital fossa), insert the needle, and/or secure the cannula." Ex. 10 (Decl. of Dr. Van Norman) at 7–8.

44. Moreover, the spasticity and pain in Mr. Hines' left arm has been—or should have been—evident to TDOC personnel since at least January 2026.

45. Nevertheless, TDOC has made no plans to accommodate Mr. Hines' medical needs and has ignored his warnings regarding the complications to his execution posed by his January 2026 stroke.

## IV. TDOC is poised to proceed with Mr. Hines' execution without granting his requested accommodation that his left arm not be straightened during his execution on August 13, 2026.

46. On August 11, 2026, undersigned counsel communicated with counsel for TDOC to ask that TDOC refrain from forcibly straightening Mr. Hines' left arm during his execution on August 13, 2026. Specifically, undersigned counsel requested that Mr. Hines' "left arm not be placed on the arm support board, and that his left arm be secured at his side, with zero degrees of abduction." Ex. 11 (Email to Matthew Kubicek).

47. Given the exigency of Mr. Hines' forthcoming execution, undersigned counsel requested that counsel for TDOC respond by 9 AM on August 12, 2026, to indicate whether Mr. Hines' request would be accommodated. *Id.*

48. Counsel for TDOC called undersigned counsel on the morning of August 12, 2026, and asked that undersigned counsel give him until 10 AM to discuss Mr. Hines' request with TDOC before initiating any litigation.

49. By 10 AM on August 12, 2026, counsel for TDOC responded that TDOC had not yet made a determination regarding Mr. Hines' request. Undersigned counsel therefore extended the deadline until 10:30 AM and notified opposing counsel that they would need to consider Mr. Hines' request to be constructively denied by that point in order to give the Court sufficient time to consider Mr. Hines' Complaint and Motion for a Temporary Restraining Order/Preliminary Injunction.

50. By 10:30 AM, TDOC still had not responded, so Mr. Hines filed this Complaint and accompanying Motion.

## CAUSES OF ACTION

**I. Defendants, acting under color of law, intend to forcibly straighten Mr. Hines' stroke-affected left arm during his execution on August 13, 2026, in violation of his rights under the Eighth and Fourteenth Amendments against cruel and unusual punishment (42 U.S.C. § 1983).**

51. To succeed on the merits of an Eighth Amendment claim involving an anticipated execution, a plaintiff typically must make two showings. First, he must show that the challenged course of action poses an "'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Baze v. Rees*, 553 U.S. 35, 50 (2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)).

52. Although Eighth Amendment cases routinely discuss such harm using the shorthand of "pain," it is well-established that, consistent with the Framers' expectations, the Eighth Amendment encompasses more than what modern medicine would classify as physical pain. Rather, the Eighth Amendment considers all forms of sufficiently severe "needless suffering," *Glossip*, 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 50), including the "'superadd[ition]' of 'terror, pain, or disgrace,'" *Bucklew*, 587 U.S. at 133 (quoting *Baze*, 553 U.S. at 48).

53. Second, when an individual challenges some aspect of his proposed execution, "the Eighth Amendment requires [him] to plead and prove a known and viable alternative." *Glossip*, 576 U.S. at 880. If there is no viable alternative method of execution, the reasoning goes, then the challenge is to the sentence, not the method, and should be treated accordingly. *Id.* at 879–80.

54. A plaintiff can establish that his challenge is to a method or circumstance, rather than the death penalty itself, by establishing that there exists at least one alternative course of action that "'is feasible, readily implemented, and in fact significantly reduce[s]' the risk of harm involved." *Nance v. Ward*, 597 U.S. 159, 164 (2022) (quoting *Glossip*, 576 U.S. at 877); *see also Abdur'Rahman v. Parker*, 558 S.W.3d 606, 616 (Tenn. 2018). ("[U]nder the federal or state constitution, a death-sentenced inmate must establish . . . that the risk is substantial compared to the known and available alternatives."). As long as that plausible alternative course of action exists, then the plaintiff's challenge does not allege, either explicitly or by implication, that "the death penalty is categorically unconstitutional." *Glossip*, 576 U.S. at 880.

55. Mr. Hines is sure or very likely to experience severe pain and suffering if TDOC's Restraint Team is allowed to forcibly extend his left arm to secure it to the arm restraint on the execution gurney.

56. As Dr. Van Norman explains in her supplemental declaration, "prolonged muscle spasticity in a limb following stroke often results in shortening of the muscles and tendons of the limb, causing permanent partial or total contracture of the limb muscles and tendons and leaving them in a permanently flexed position. Forcibly straightening a stroke-affected limb with prolonged muscle spasticity can cause significant tears in the muscles and tendons, and result in extreme pain." Ex. 12 (Supp. Decl. of Dr. Van Norman).

57. Dr. Nadkarni, who examined Mr. Hines on February 2, 2026, concurs: "In my professional opinion, it would be extremely painful for Mr. Hines to have his stroke-affected, left limb forcibly straightened in any direction or to have his left hand forcibly unclenched." Ex. 13 (Supp. Decl. of Dr. Nadkarni).

58. Moreover, it is simply not necessary for TDOC to straighten Mr. Hines' left arm in order to accomplish his execution on August 13, 2026.

59. According to Dr. Van Norman, "[w]hile the stroke-related spasticity in Mr. Hines' left arm may interfere with IV access in that arm, it does not preclude the IV team from being able to place an IV in other non-stroke affected limbs." *Id.*

60. Thus, in Dr. Van Norman's professional opinion, "with potential alternative sites available, it is not necessary for the TDOC to straighten Mr. Hines' left arm in order to accomplish his execution on August 13, 2026." Ex. 12 (Supp. Decl. of Dr. Van Norman).

61. A feasible, readily available alternative therefore exists that would completely eliminate the risk of Mr. Hines' experiencing severe pain and suffering due to TDOC's forcible extension of his left arm—namely, allowing Mr. Hines to be strapped to the gurney with his left arm at his side and placing the peripheral IV-lines in his non-stroke-affected limbs.

## II. Defendants' intent to forcibly extend Mr. Hines' stroke-affected left arm violates his rights under Title II of the Americans with Disabilities Act.

62. "To state a claim under Title II of the Americans with Disabilities Act (ADA), the plaintiff must allege that (1) he has a disability; (2) he is otherwise

qualified for the benefit or services at issue; and (3) he was excluded from participation in, denied the benefits of, or was subjected to discrimination under the program because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

63. It is well-settled that a plaintiff can satisfy the third element of a Title II claim by establishing that the defendant failed to provide a reasonable accommodation necessary to permit him to participate equally in the relevant program or service, in light of his disability. *See Jones v. City of Detroit, Mich.*, 20 F.4th 1117, 1119 (6th Cir. 2021) (citing *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017)). Accordingly, "prison officials have a general duty to provide reasonable accommodations to their disabled inmates." *Cox v. Corr. Med. Servs., Inc.*, No. 06-10350, 2006 WL 3147733, at *3 (E.D. Mich. Oct. 25, 2006)." *Trivette v. Tennessee Dep't of Correction*, 739 F. Supp. 3d 663, 704 (M.D. Tenn. 2024).

64. As to the first element, Mr. Hines is a disabled individual within the meaning of the ADA.

65. Since Mr. Hines suffered his stroke in January 2026, he is reliant on a wheelchair and cannot walk. He requires assistance to transfer from his hospital bed to his wheelchair and vice versa. *See* Ex. 6 (Decl. of David Paschal).

66. Mr. Hines is unable to see out of his left eye. *See id.*; Ex. 7 (Decl. of Aly Finn); Ex. 8 (Decl. of Dr. Nadkarni).

67. Mr. Hines requires extensive assistance in the tasks of daily living. Mr. Hines cannot bathe himself and struggles to feed himself. He is incontinent and

requires adult diapers and a urinary catheter. *See* Ex. 6 (Decl. of David Paschal); Ex. 7 (Decl. of Aly Finn).

68. As to the second element, Mr. Hines has completed the standard three-tier appellate process in death penalty cases, and on September 30, 2025, the Tennessee Supreme Court set Mr. Hines' execution date for August 13, 2026.

69. These being the primary legal requisites for the setting of execution dates, Mr. Hines is "otherwise qualified" to be executed in Tennessee's ordinary, legally prescribed manner of execution by lethal injection without additional severe physical pain being inflicted on him by TDOC through the manipulation of his limbs in a manner incompatible with his physical condition. *See Reeves v. Comm'r, Alabama Dep't of Corr.*, 23 F.4th 1308, 1321 (11th Cir. 2022) (recognizing applicability of Title II to execution-related accommodations).

70. As to the third element, Mr. Hines requested reasonable accommodation from TDOC on August 11, 2026. Specifically, Mr. Hines requested that TDOC refrain from straightening his left arm or unclenching his left hand during the execution process, but did not otherwise object to his left arm being restrained at his side. Ex. 11 (Email to Matt Kubicek).

71. Mr. Hines' request for reasonable accommodation does not impede the lawful execution of a sentence nor does it unreasonably burden the core functions of TDOC.

72. Nevertheless, TDOC constructively denied Mr. Hines' request.

## PRAYER FOR RELIEF

73. Mr. Hines therefore respectfully requests that this Court enjoin TDOC from attempting to straighten Mr. Hines' stroke-affected left arm or unclench his left hand, and from attempting to secure his left arm to the execution gurney arm support, for the purposes of his execution on August 13, 2026.

Respectfully submitted,

DREW S. BRAZER
KATHERINE M. DIX
MARSHALL A. JENSEN*
Asst. Federal Public Defenders

ELIJAH SWINEY
Research & Writing Specialist

KIT THOMAS
Deputy Chief, Capital Habeas Unit

Federal Public Defender, Middle District of Tennessee
164 Rosa L. Parks Blvd.
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265
Email: Marshall_Jensen@fd.org

/s/ *Marshall A. Jensen*

**Counsel of Record*

## CERTIFICATE OF SERVICE

I, Marshall Jensen, certify that on August 12, 2026, a true and correct copy of the foregoing was served via email to opposing counsel, Matthew Kubicek, Assistant Attorney General.

*/s/ Marshall A. Jensen*

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Marshall A. Jensen*