**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **ANTHONY DARRELL HINES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **N0. 3:26-cv-01148** |
| ) | |
| **FRANK STRADA, in his official capacity** ) | |
| **as Tennessee's Commissioner of** ) | |
| **Correction, and** ) | |
| **KENNETH NELSON, in his official** ) | |
| **capacity as Warden, Riverbend** ) | |
| **Maximum Security Institution,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Hines' motion for a temporary restraining order and/or preliminary injunction and supporting memorandum. (Doc. No. 2). Defendants have filed an opposition (Doc. No. 13), to which Hines has filed a reply (Doc. No. 14).

The Tennessee Supreme Court has set the execution of Anthony Darrell Hines on Thursday, August 13, 2026, at 10:00 a.m. (CST). Hines has filed this lawsuit against Frank Strada, Tennessee's Commissioner of Correction, and Kenneth Nelson, Warden, Riverbend Maximum Security Institution ("Riverbend"), where Hines awaits execution. Hines does not attempt to delay the imposition of the death penalty on August 13, 2026. Hines seeks an injunction that Defendants "not attempt to straighten Mr. Hines' stroke-affected left arm or unclench his left hand for the purposes of his lethal injection on August 13, 2026." (Doc. No. 2-1).

The parties' briefing has resolved that part of the requested injunctive relief related to Hines' left hand. The Defendants have represented to the Court that Hines' "left hand will not be

1

forced open or closed in a painful manner and the State will refrain from taping that hand." (Doc. No. 13 at 2, N.2). The Court will enter an order accordingly.

Turning to Hines' left arm, it is impaired due to two strokes. While in the custody of Defendants, Hines has suffered two strokes. In early December 2025, he suffered a stroke at Riverbend. (Doc. No. 1 at 4). Defendants' medical provider, Centurion, disagreed about the necessity of emergency care after the stroke, so Hines was treated within the correction system. (Id.) That decision proved misguided and unsound because on January 13, 2026, about a week later, Hines suffered a second stroke. He fell in his cell and hit his head. (Id. at 5).

Since his second stroke, Hines has been in the Riverbend infirmary. (Id. at 6). He is paralyzed on his left side. He suffers from partial left-sided blindness. He also experiences muscular atrophy, muscle spasticity and incontinence. (Id.) On February 2, 2026, Hines was examined by Dr. Siddhartha Nadkarni, a board certified neurologist. (Doc. No. 1-8). Dr. Nadkarni found Hines "in a wheelchair and appeared disheveled, as if he had not been properly bathed in a while." (Doc. No. 1-8 at 4). Based on his examination of Hines, Dr. Nadkarni concludes that Hines is:

> suffering from hemiparesis (weakness on one side) on his left side. He was unable to lift his left arm and could not stand unassisted. He had "neglect" of the left side of his body, in that he did not fully recognize or understand that it was there or that it was part of his body, something that can happen from strokes of this nature. He has no vision in his left hemi-visual field in either eye. . . . He cannot walk and falls to the side or forward if he leans too far forward. Mr. Hines' left hand was clenched in a fist, and the skin on his hand and below his left elbow had a purple hue. This is consistent with spasticity of the musculature in that limb. There is also a bruit heard behind the right eye a sign of possible intravascular obstruction in the retinal artery.

(Id. at 5).

Recent reports of Hines' condition confirm that he continues to experience health issues on the left-side of his body. His left arm remains bent at the elbow and his left hand is clenched in a fist. (Doc. No. 1 at 7).

On July 23, 2026, Alysandra Finn, an employee of the Federal Public Defender, visited Hines and reports that he could not use his left arm and that it is in a bent position. She did not see him use his left hand, which was "swollen and reddish-purple," and his fingers on his left hand were "curled involuntarily into a fist." (Doc. No. 1-7 at 1). As of August 11, 2026, when Hines was visited by David Paschal, an employee of the Federal Public Defender, he did not see Hines move his left leg, arm or hand. His left arm was in a bent position. (Doc. No. 1-6 at 2-3). When Paschal attempted to straighten Hines left arm, Hines said that it was painful, caused a burning sensation, and said the pain was like a "tire jack fell and the car came down crushing his shoulder." (Id. at 3). He described the pain as a "10 on a scale of 1 to 10," and said that it felt "like being stuck with a hot poker." (Id.). His left hand fingers were "frozen" while his "ring and pinkie fingers are curled in toward his palm." (Id.).

However, the most recent medical examination of Hines occurred today around 2:00 p.m. when he was examined by Dr. Eduardo Ortiz, Chief Medical Officer for the Tennessee Department of Corrections. (Doc. No. 13-4 at 2). Based on his examination, he reports that Hines' "left arm could be passively abducted to at least approximately 60 degrees without exhibiting apparent difficulty, pain, discomfort or distress." (Doc. No. 13-1 at 3). According to Dr. Ortiz, Hines "began to experience pain with additional abduction as the arm exceeded approximately 60 degrees, at which point [Dr. Ortiz] discontinued further movement." (Id.)

According to the Tennessee Department of Corrections Lethal Injection Executive Protocol ("Protocol") (Doc. No. 1-9), the final steps before execution require that Hines' arms be extended

on the gurney. The Protocol specifically envisions that at or about 10:00 a.m. the Restraint Team will move Hines into the execution chamber. His arms are secured into "arm extensions on the gurney." (Id. at 14). Dr. Ortiz believes "that positioning Mr. Hines' left arm on the gurney would not require abduction of his left arm beyond approximately 45 degrees." (Doc. No. 13-1 at 3).

Relying on the Eighth and Fourteenth Amendments prohibition against cruel and unusual punishment,[1] Hines seeks an injunction that the State of Tennessee "shall not attempt to straighten [his] stroke-affected left arm or unclench his left hand for the purpose of lethal injection on August 13, 2026." (Doc. No. 2-1 at 1). The Constitution prohibits "execution procedure that creates an 'objectively intolerable risk of harm' or a 'demonstrated risk of severe pain' that is 'substantial when compared to the known and available alternatives.'" Cooey v. Strickland, 589 F.3d 210, 215 (6th Cir. 2009) (citing Baze v. Rees, 553 U.S. 35, 61 (2008) (plurality opinion)). Therefore, Hines' likelihood of success on his constitutional claim depends on first his showing that the Protocol "superadds pain," Bucklew v. Precythe, 587 U.S. 119, 134 (2019), or a "'sure or very likely' risk of serious pain 'and needless suffering.'" Cooey, 589 F.3d at 220 (citation omitted). And secondly, Hines must show that "a feasible and readily implemented alternative method of execution exists that substantially reduces the risk of severe pain and that the State has refused to adopt without a legitimate penological reason." Middlebrooks v. Parker, 22 F.4th 621, 624 (6th Cir. 2022) (Thapar, J., statement respecting denial of rehearing en banc) (internal quotation marks omitted).

A preliminary injunction is an extraordinary remedy. Louisiana-Pac. Corp. v. James Hardie Bldg. Prods., Inc., 928 F.3d 514, 517 (6th Cir. 2019). In deciding whether to grant a

---

[1] The Court acknowledges Hines' reliance on the Americans with Disabilities Act, but his right to relief under 42 U.S.C. § 1983 is doubtful.

4

preliminary injunction, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." Id. (quoting S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 849 (6th Cir. 2017)).

The Court weighs these factors together under a sliding-scale approach. PCC Airfoils, LLC v. Daugherty, 176 F.4th 509, 513 (6th Cir. 2026) (Sutton, C.J.). A strong showing on one factor may outweigh a weaker showing on another, and no single factor ordinarily controls. Id. Two requirements, however, are indispensable. The Court cannot issue a preliminary injunction when the plaintiff has no likelihood of success on the merits or faces no risk of irreparable injury. Id. The Court may grant this extraordinary relief only when the four factors, considered together, "clearly weigh in the plaintiff's favor." Id. at 514.

Here, Hines has not made a clear showing of likelihood of success or irreparable harm. Other than the relief concerning his left hand, which the State agrees not to force open or close, the relevant factors do not clearly weigh in Hines' favor on the relief concerning his left arm. The medical examination and lay observations presented by Hines must be considered with Dr. Ortiz's examination. It appears unlikely that his left arm will be extended to the point of causing him the degree of pain to merit the relief he seeks.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE

5